1

2

3

4

**SEYFARTH SHAW LLP**
William J. Dritsas (SBN 97523)
*wdritsas@seyfarth.com*
560 Mission Street, 31st Floor
San Francisco, CA  94105-2930
Telephone:      (415) 397-2823
Facsimile:      (415) 397-8549

5

6

7

8

**SEYFARTH SHAW LLP**
Michael W. Kopp (SBN 206385)
*mkopp@seyfarth.com*
400 Capitol Mall, Suite 2350
Sacramento, California  95814
Telephone:      (916) 448-0159
Facsimile:      (916) 558-4839

9

10

Attorneys for Defendants Safeway Inc., Albertsons
Companies, Inc.

11

12

13

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

14

15

16

17

18

19

20

21

22

NORMA ZUNIGA, *individually, and as successor-in-interest to PEDRO ZUNIGA, Deceased,*

                         Plaintiff,

          v.

SAFEWAY, INC.; ALBERTSONS' COMPANIES, INC.; and DOES 1 through 100 inclusive,

                         Defendants.

Case No. _____

**SAFEWAY INC.'S NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT**

[Filed concurrently with:
(1) Civil Cover Sheet
(2) Declaration of Penny Schumacher
(3) Declaration of Michael Kopp
(4) Certification of Interested Parties
(5) Request for Judicial Notice]

(Alameda County Superior Court Case No. HG20062742)

Complaint Filed: May 13, 2020

23

24

25

26

27

28

TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND HER COUNSEL OF RECORD:

**PLEASE TAKE NOTICE** that Defendant Safeway Inc. ("Safeway") hereby removes the above-captioned matter from the Superior Court of the State of California for the County of Alameda, to the United States District Court for the Northern District of California, pursuant to 28 U.S.C. §§ 1331, 1441 and 1446, on the basis of (1) original federal subject matter jurisdiction under the Federal Occupational Safety and Health Act of 1970 (29 U.S.C. § 654), and the Labor Management Relations Act ("LMRA"), codified in relevant part at 29 U.S.C. § 185; and (2) supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

Defendant Albertsons Companies, Inc. ("Albertsons) joins and consents to removal. In support of its request, Safeway states as follows:

## STATEMENT OF JURISDICTION

1.      This court has original federal jurisdiction over this action because it presents a "federal question" for three independent reasons:

(a) Plaintiff has expressly pleaded an alleged violation of the Federal Occupational Safety and Health Act of 1970 (29 U.S.C. § 654) ("OSHA"), and asserts a Third Cause of Action for "Violations" of Federal OSHA.

(b) Plaintiff's remaining state law claims necessarily raise substantial federal issues, as they are based upon various alleged violations of federal statutes and federal guidelines promulgated by Federal U.S. Department of Labor Occupational Safety and Health Administration OSHA ("OSHA) and the U.S. Food and Drug Administration. *See Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg.,* 545 U.S. 308, 312 (2005);

(c) Plaintiff's claims and allegations require interpretation of relevant provisions of the collective bargaining agreement ("CBA") which at all times governed Zuniga's employment, and which addressed issues of workplace safety, discipline, and attendance that are relevant to the resolution of Plaintiff's claims.

Each basis for jurisdiction is addressed in Sections I-III below.

1

**STATE COURT COMPLAINT AND ALLEGATIONS**

2.      Plaintiff Norma Zuniga ("Plaintiff") alleges she is the wife and alleged successor in interest to Pedro Zuniga ("Zuniga"), a former employee of Safeway. Compl. ¶¶ 1, 2. Plaintiff alleges that Albertsons is the owner, parent company, and alter ego of Safeway, and that Zuniga was therefore "an employee of Defendants Safeway Inc. and Albertsons Companies, Inc." ("Albertsons"). Compl. ¶¶ 1, 7, 9, 34.

3.      Plaintiff's Complaint alleges Zuniga passed away from COVID-19 on April 13, 2020, and alleges Zuniga's death was proximately caused by Defendants' "negligent actions and inactions" regarding COVID 19 protections at Zuniga's workplace at the "Safeway Distribution Center in Tracy, California." Compl. ¶¶ 1, 29, 39, 40. Plaintiff alleges that Defendants' actions did not comply with federal OSHA and Food and Drug Administration guidelines and OSHA statutory requirements.[1]

4.      Based upon the foregoing allegations, Plaintiff's Complaint asserts six causes of action for: "(1) Negligence, (2) Gross Negligence, (3) Violations of Federal Occupational Safety and Health Act of 1970 (29 U.S. Code § 654); (4) Violations of the California Occupational Safety and Health Act of 1973 (Title 8, California Code of Regulations § 3203 and California Labor Code § 6400 *et seq.*); Fraudulent Concealment of Injury (California Labor Code § 3602(b)(2)); (6) Wrongful Death." *See* Complaint, Caption, and ¶¶ 37-87. Plaintiff, as the alleged successor-in-interest, brings this action against Defendants Safeway and Albertsons.

**REMOVAL IS TIMELY**

5.      On May 13, 2020, Plaintiff Norma Zuniga filed a civil action in the Superior Court of the State of California, for the County of Alameda, entitled *Norma Zuniga, individually, and as successor-*

---

[1] Defendants deny that there was any failure to take appropriate workplace safety precautions. To the contrary, Safeway's Tracy Distribution Center was inspected by California OSHA on April 15, 2020, and no violations were found. *See* Declaration of Penny Schumacher ("Schumacher Decl.") at ¶ 7, Ex. B, June 9, 2020. The "Notice of No Violation After Inspection" ("Notice") stated that "[a]n inspection was conducted . . . at a place of employment located at 16900 West Schulte Road, Tracy on 04/15/20." The inspection concerned "Procedures and Policies for COVID 19." The inspection was initiated on April 15, 2020, and "[s]aid inspection was completed on 06/09/2020." *Id.* The Notice concluded that "It has been determined that no violation of any standard, rule, order or regulation set forth in Title 8, California Code of Regulations and Division 5 of the California Labor Code has been found as a result of this inspection."

*in-interest to PEDRO ZUNIGA, Deceased v. Safeway, Inc.; Albertsons Companies, Inc.; and DOES 1 through 100 inclusive,* Case No. HG20062742. Declaration of Michael Kopp ("Kopp Decl."), Ex. A. The Summons and Complaint, and all other materials "served upon . . ." Defendants in this matter in the state court action are attached as **Exhibit A**. 28 U.S.C. §§ 1446(a).

6.      Service was made on Safeway on June 8, 2020. Kopp Decl., Ex. A (Proof of Service of Summons).

7.      Service was made on Albertsons on June 8, 2020. Kopp Decl., Ex. B. (Proof of Service of Summons).

8.      Pursuant to 28 U.S.C. § 1446(b), this Notice is filed within thirty days of the date Safeway was served with the Complaint.

9.      Defendant Albertsons consents to removal. All named and served defendants therefore consent to the removal of this action to federal court. *See Proctor v. Vishay Intertechnology Inc.,* 584 F.3d 1208, 1217 (9th Cir. 2009) (One defendant's timely removal notice containing an averment of the other defendants' consent is sufficient to satisfy rule of unanimity, and separate "joinders" in the notice of removal are not necessary). In addition, Plaintiff's naming of "DOE" defendants is irrelevant to the "rule of unanimity" regarding the consent of defendants, as the rule does not apply to nominal, "DOE," or unknown defendants, and only applies to defendants properly joined and served in the action. *See Emrich v. Touche Ross & Co.,* 846 F.2d 1190, 1199 (9th Cir. 1988)*; Hewitt v. City of Stanton,* 798 F.2d 1230, 1233 (9th Cir. 1986); *Salveson v. Western States Bankcard Ass'n.,* 731 F.2d 1423, 1429 (9th Cir. 1984).

# I.      PLAINTIFF'S COMPLAINT PRESENTS A FEDERAL QUESTION BY EXPRESSLY BRINGING A CLAIM UNDER FEDERAL LAW (OSHA)

10.     Plaintiff throughout her Complaint alleges that Defendants purportedly failed to comply with federal law and federal guidelines. Specifically, Plaintiff alleges Defendants purportedly failed to comply with Federal U.S. Department of Labor Occupational Safety and Health Administration OSHA ("OSHA) guidelines; failed to comply with "Guidance on Preparing Workplaces for COVID-19" issued by Federal OSHA; failed to implement an "Infection Disease Preparedness and Response Plan" as

identified by Federal OSHA; failed to "implement, promote, and enforce social distancing guidelines promulgated by the . . . federal" government; failed to follow "specific guidelines" from "federal agencies;" and violated OSHA's statutory requirements. Compl. 23, 38, 39, 45-47, 49, 55-57, 63, 67, 73, 83. These core allegations of purported violations of federal law and federal guidelines form the basis for all of Plaintiff's causes of action. *Id.*

11.    Not only is Plaintiff's Complaint replete with reference to federal law and federal administrative guidance, but Plaintiff's third cause of action is expressly brought under federal law and alleges "Violations of Federal Occupational Safety and Health Act of 1970 (29 U.S.C. Code § 654)." Compl. ¶¶ 55-62. Plaintiff alleges "Section 5 of the Occupational Safety and Health Act of 1970 sets forth the basic duties owed by an employer to its employees." Compl. ¶ 56. Plaintiff further alleges that Defendants "breached their duty of care owed to Decedent pursuant to Section 5 of the Occupational Safe[ty] and Health Act of 1970 by . . . failing to comply with Federal . . . OSHA guidelines" and failing to "implement an Infection Disease Preparedness and Response Plan," in accordance with Federal OSHA publications. Compl. ¶ 57.

12.    Plaintiff's Complaint accordingly presents a claim allegedly arising under Federal law. *See Cook v. Inlet Region, Inc.*, 690 F.3d 1127, 1130 (9th Cir. 2012) ("[T]here is federal question jurisdiction over a federal law claim ***simply by virtue of its being a claim brought under federal law***, whether or not it incorporates state law.") (emphasis added).

13.    Defendants do not concede that Plaintiff has stated a viable claim under Federal OSHA, and intend to move to dismiss the claim. But the fact that a claim may be later dismissed does not deprive the Federal Court of original jurisdiction over a claim arising under federal law. "Any non-frivolous assertion of a federal claim suffices to establish federal question jurisdiction, ***even if that claim is later dismissed on the merits***." *Cook*, 690 F.3d at 1131 (emphasis added), citing and quoting *Cement Masons Health & Welfare Trust Fund for N. Cal. v. Stone*, 197 F.3d 1003, 1008 (9th Cir. 1999). *See also, Macias v. Waste Management of Alameda County*, 2014 WL 334206 (N.D. Cal. Jan. 29, 2014) (noting that "[t]he action was commenced here on the basis of federal-question jurisdiction in light of

allegations that defendants violated federal OSHA laws," and ordering dismissal of "the first claim for violations of federal OSHA" as federal law does not provide a "private right of action.").

## II.   PLAINTIFF'S COMPLAINT NECESSARILY RAISES DISPUTED AND SUBSTANTIAL FEDERAL ISSUES.

14.   In addition to expressly bringing a claim under federal OSHA, Plaintiff's remaining state-law claims "necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (citing *Grable*, 545 U.S. at 314).

15.   A complaint does not raise federal question jurisdiction only in circumstances where it explicitly asserts a claim pursuant to a federal statute. Rather, the doctrine recognizing "arising under" jurisdiction where there is a substantial federal question "captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that ***nonetheless turn on substantial questions of federal law***, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Grable & Sons*, 545 U.S. at 312 (emphasis added). To determine whether federal question jurisdiction attaches, despite the lack of a federal cause of action, the central question is: "does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities[?]" *Id*. at 314.

16.   In *Grable & Sons*, the Supreme Court held that federal question jurisdiction was warranted in a superior title action. 545 U.S. at 320. The plaintiff's claim for superior title was premised on whether it received notice under 26 U.S.C. § 6335, an IRS notice requirement. *Id*. at 310–11. The Court noted that the meaning of the statute was an essential element of the plaintiff's claim and actually in dispute. *Id*. at 314–15. Additionally, the meaning of the federal tax provision was "an important issue of federal law that sensibly belongs in federal court" because the government has a strong interest in the ability of the IRS to satisfy its claims for the property of delinquents, which clear, consistent rules of notice will promote. *Id*. at 315. The Court also explained that few state title cases would raise a

SAFEWAY INC.'S NOTICE OF REMOVAL OF CIVIL ACTION TO U.S. DISTRICT COURT

contested matter of federal law, and would therefore not significantly impact the federal-state division of labor. *Id*.

17.     Plaintiff's Complaint, on its face, likewise necessarily raises substantial federal issues. The core questions within each claim is, during a declared national emergency, how was an essential business (national food retailer Safeway) to address the national interest in maintaining food supplies concurrent with safeguarding the health and safety of the workplace; what workplace protections were required by federal statute and pursuant to evolving federal guidelines issued by multiple federal administrative agencies; and were Defendants' actions in compliance with those federal laws and guidance.

18.     Plaintiff's Complaint is replete with reference to various federal statutes, federal administrative guidance, and federal administrative agency publications, with all of her claims resting on allegations that Defendants purportedly failed to comply with  those federal laws and guidelines. Specifically, Plaintiff alleges Defendants purportedly failed to comply with Federal U.S. Department of Labor Occupational Safety and Health Administration OSHA ("OSHA) guidelines; allegedly failed to comply with "Guidance on Preparing Workplaces for COVID-19" issued by Federal OSHA; purportedly failed to implement an "Infection Disease Preparedness and Response Plan" as identified by Federal OSHA; purportedly failed to "implement, promote, and enforce social distancing guidelines promulgated by the . . . federal" government; and allegedly failed to follow "specific guidelines" from "federal agencies." Compl. ¶¶ 23, 38, 39, 45-47, 49, 55-57, 63, 67, 73, 83. In addition, to the extent that the Complaint also makes reference to California OSHA, Cal OSHA advised employers at all times relevant to the Complaint to follow federal CDC guidelines, including through the time Zuniga was no longer in the workplace. Request for Judicial Notice, Ex. D (Cal OSHA recommends that employers "follow recommendations from the Centers for Disease Control and Prevention (CDC)").

19.     Plaintiff also alleges that guidance was issued by the U.S. Food and Drug Administration on March 17, 2020 regarding cleaning workplaces and informing employees of confirmed COVID cases, and that Defendants did not comply with U.S. FDA guidelines. Compl. ¶¶ 25, 38, 39, 45-47, 49, 55, 57, 63, 67, 73, 83.

6

---

SAFEWAY INC.'S NOTICE OF REMOVAL OF CIVIL ACTION TO U.S. DISTRICT COURT

20.     These allegations necessarily raise substantial federal issues. Plaintiff's attempt to have the contours of these federal guidelines and statutes adjudicated as to their specific application to COVID 19 workplace obligations in the midst of a national pandemic raises federal issues that particularly demand a uniform federal treatment. *See, e.g., Rural Cmty. Workers All. V. Smithfield Foods, Inc.*, 2020 WL 2145350 at *8 (W.D. Mo. May 5, 2020) (referring plaintiff's tort claims against a meat processing plant to OSHA was necessary to "ensure uniform national enforcement of the Joint [CDC and OSHA] guidance.")

21.     Moreover, these federal issues are disputed. For example, Plaintiff alleges on March 9, 2020, OSHA released a publication regarding "Guidance on Preparing Workplaces for COVID-19," and alleged that this included "Personal Protective Equipment (PPE) Controls." Compl. ¶ 23. Plaintiff alleges that Defendants' March 20, 2020 Team Talk guidance on Cornavirus violated federal PPE guidance by advising that masks and gloves were not recommended for use by employees at the Distribution Center "contrary to the guidance issued by federal . . . authorities." But this allegation is disputed, including on the basis that at that time (March 20, 2020), OSHA's March 9, 2020 guidance equivocated on whether PPE was recommended, and instead instructed employers to consult the CDC website for guidance. Request for Judicial Notice, Ex. C. In turn, the CDC was at that time advising ***against*** wearing masks, except as to health care workers and people who have COVID-19 and are showing symptoms. Request for Judicial Notice, Ex. A, CDC Guidance in effect through April 2, 2020:

> If you are NOT sick: You do not need to wear a facemask unless you are caring for someone who is sick (and they are not able to wear a facemask). Facemasks may be in short supply and they should be saved for caregivers.

The CDC advised that healthy people should don masks only when taking care of someone who was ill with the new coronavirus.

22.     It was not until April 3, that the CDC changed course and advised the wearing of face coverings when in public. Request for Judicial Notice, Ex. B. Even then, the CDC explained that the cloth face covering was not PPE meant to protect the wearer, but rather "The cloth face cover is meant to protect ***other people in case you are infected***." (emphasis added).

23.     During the relevant time period, there was not one static set of federal guidelines, but rather shifting federal guidance from **multiple** federal agencies (OSHA, FDA, CDC) that developed and changed over time in response to a novel nationwide pandemic. As identified above, Plaintiff's Complaint is replete with references to federal OSHA and Food and Drug Safety Administration guidance. The Court would be called to determine not only what those regulations mean, but also how they apply to workplace COVID prevention measures, how they apply in conjunction with other federal agency guidance, and determining when they applied. *See, e.g., Scott v. Lance Aviation, Inc.*, 2010 WL 11507789, at *3 (M.D. Fla. Mar. 10, 2020) (denying remand where the court would need to resolve what federal regulations applied, what conduct they required, and whether a predecessor set of regulations applied, "or how the provisions of the CARS and FARS can be reconciled with one another as they relate to [Defendant's] duty.")

24.     Finally, exercising jurisdiction will not disturb the balance of state and federal judicial responsibilities. A consistent federal interpretation of the various guidance from multiple federal agencies regarding the obligations that the issued guidance imposed in the midst of a national pandemic is of paramount importance.

25.     Assertions of such federal jurisdiction will not undermine the balance of state and federal judicial responsibilities, as COVID workplace claims based on alleged violations of federal statute and guidance are not "run of the mill" workplace injury actions, and would leave the majority of workplace injury/death actions within state court or state administrative agencies. *See, e.g., Grable,* at 319 ("it is the rare state quiet title action that involves contested issues of federal law. Consequently, jurisdiction over actions like Grable's would not materially affect, or threaten to affect, the normal currents of litigation"); *County of Santa Clara v. Astra USA, Inc.*, 401 F. Supp. 2d 1022 (N.D. Cal. 2005) (finding that taking jurisdiction over state law claims alleging pharmaceutical companies overcharging state institutions would not disrupt the balance of federal and state responsibilities; "Violation of federal law will rarely be a presumptively conclusive element of claims for accounting, unjust enrichment, false claims or unfair competition.")

### III.   FEDERAL QUESTION JURISDICTION BASED ON THE LABOR MANAGEMENT RELATIONS ACT

26.     This court also has original jurisdiction over this action under the LMRA, which grants federal district courts subject matter jurisdiction over claims involving the interpretation of "contracts between an employer and a labor organization." 29 U.S.C. § 185(a). *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007) (if the claim requires the court to *interpret* a CBA or is "substantially dependent on analysis of a collective-bargaining agreement," the claim is preempted, even if based on state law).

27.     Section 301 of the LMRA provides federal jurisdiction over "suits for violation of contracts between an employer and a labor organization." 29 U.S.C. § 185(a). "The preemptive force of section 301 is so powerful as to displace entirely any state claim [1] based on a collective bargaining agreement, and [2] any state claim whose outcome *depends on analysis of the terms of the agreement*." *Young v. Anthony Fish Grottos, Inc.*, 830 F.2d 993, 997 (9th Cir. 1987) (citations omitted) (emphasis added); *see also, Curtis v. Irwin,* 913 F.3d 1146, 1152 (9th Cir. 2019) ("Section 301 has such extraordinary pre-emptive power that it converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.") (citations and quotations omitted).The Ninth Circuit has clarified that the LMRA preempts claims in two respects. *First*, if the claim involves a right that exists because of the CBA rather than state law, the "claim is preempted and [the court's] analysis ends there." *Burnside*, 491 F.3d at 1059; *Curtis v. Irwin*, 913 F.3d 1146, 1152 (9th Cir. 2019); *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1032 (9th Cir. 2016)). *Second*, if the claim requires the Court to interpret a CBA or is "substantially dependent on analysis of a collective-bargaining agreement," the claim is preempted, even if based on state law. *Burnside*, 491 F.3d at 1059; *Curtis,* 913 F.3d at 1152.

28.     The Ninth Circuit has recently reaffirmed that "federal preemption under § 301 'is an essential component of federal labor policy' for three reasons." *Curtis*, 913 F.3d at 1152 (citations omitted). *First*, "a collective bargaining agreement is more than just a contract; it is an effort to erect a system of industrial self-government. Thus, a CBA is part of the "continuous collective bargaining

9

process." *Curtis*, 913 F.3d at 1152. "***Second***, because the CBA is designed to govern the entire employment relationship, including disputes which the drafters may not have anticipated, it calls into being a new common law—the common law of a particular industry or of a particular plant." *Id*. "Accordingly, the labor arbitrator is usually the appropriate adjudicator for CBA disputes because he was chosen due to the parties' confidence in his knowledge of the common law of the shop and their trust in his personal judgment to bring to bear considerations which are not expressed in the contract as criteria for judgment." *Id*. "***Third***, grievance and arbitration procedures provide certain procedural benefits, including a more prompt and orderly settlement of CBA disputes than that offered by the ordinary judicial process." *Id*.

29.     Here, Plaintiff's claims are preempted under the LMRA because they require interpretation of multiple provisions of the CBA that at all times governed Zuniga's employment and apply to Plaintiff's factual allegations in support of her alleged theory of liability.

30.     Plaintiff alleges that Defendants failed to "ensure that their facility operations were conducted and managed in such a manner so as to safeguard the safety and well-being of their employees, including [Zuniga]." (Compl. ¶ 47). Plaintiff alleges that this violated the duty to provide a safe workplace as required by California Labor Code Section 6400. *See generally,* Compl., Fourth Cause of Action, ¶ 66. Plaintiff further alleges Defendants failed to establish an "effective injury prevention program." *See generally,* Compl., ¶¶ 66, 67. Plaintiff also alleges purported fear of discipline was an issue, "including the potential for accruing 'points' which could lead to termination," and "taking adverse employment actions against employees due to attendance issues . . . ." Compl. ¶¶ 28. 39(p).

31.     ***Applicable Collective Bargaining Agreement***. The terms and conditions of Zuniga's employment was governed by a CBA between Safeway and Zuniga's collective bargaining representative, Teamsters Local 439 ("Teamsters"), applicable to Zuniga. (Schumacher Decl.") ¶ 6, Ex. A.).

32.     The CBA has collectively bargained provisions that pertain to each of Plaintiff's allegations regarding workplace safety, sick leave, discipline, and attendance 'points." Schumacher Decl., ¶ 6, Ex. A.

SAFEWAY INC.'S NOTICE OF REMOVAL OF CIVIL ACTION TO U.S. DISTRICT COURT

64592868v.1

The CBA provides a "points" system that addresses leaves of absence, but Safeway disputes Plaintiff's apparent interpretation. Plaintiff's allegations that COVID leaves would lead to "points" and discipline raises disputed issues of interpretation regarding the relevant CBA provisions and associated shop practice. The CBA contains a "points" system for attendance, but differentiates between "excused" and "unexcused absences." The CBA provides that "Illness/injury/personal. Points shall be charged for all absences, as set forth in Sections B & C . . . ." In turn, Section B identifies ***excused*** absences:

> The excused category includes the following: 1. Occupational Injury, . . . 9. Any other leaves of absence specified in the union contract (when requested beforehand in writing and granted), 10. Any period of absence qualifying for FMLA benefits, 11. Any non-occupational illness or injury which requires hospital admission overnight stay and is validated by proof of admission, 12. Sickness - as accrued, up to a maximum of forty (40) hours paid sick leave per year.

Schumacher Decl., Ex. A, Teamsters CBA, Ex. C, p. 73-74. In contrast, "Unexcused absences" are: "1. Any absence not covered above. 2. A tardy of three (3) or more minutes." *Id.*

Here, to resolve whether COVID illnesses truly are subject to "points" or threat of "discipline" as alleged by Plaintiff, the Court would have to interpret these provisions. For example, Is a COVID illness within the scope of the CBA provision excusing leaves for "Occupational Injury" and therefore excused, even if non-occupationally acquired? Does a COVID illness meet the CBA standard for excused absences as a FMLA qualifying period of absence? Is COVID leave simply "Sickness" subject to 40 hours paid sick leave?[2] Or is a COVID illness "other leaves specified in the contract"

For example, in addition to express sick leave provisions, the CBA addresses other, additional and undefined leaves of absence:

> The Company may, at its discretion, grant a leave of absence for personal reasons in thirty (30) day increments and/or consistent with State and Federal law. The employee shall be given a written notice of the terms and conditions of any such leave of absence granted if requested by the employee.

Schumacher Decl., Ex. A, Teamsters CBA, Article XVI, p. 12.

---

[2] The CBA contains provisions entitling employees to paid sick leave well in excess of the amounts provided by state law. Those provisions further provide that "Unused sick leave benefits in any one-(1) year shall accumulate from year to year to a maximum of thirty-six (36) days . . . ." Schumacher Decl, Ex. A, Teamsters CBA, Article XIII, p. 10.

11

In addition, the CBA provides that Acts of God or "such other emergency beyond the Company's control" may impact or alter CBA commitments:

> In the event operations cannot commence or continue when so recommended by civil authorities, or public utilities fail to supply electricity, water or gas, or there is a failure in the public utilities, sewer system, or the interruption of work is caused by a computer failure, an Act of God, or such other emergency beyond the Company's control, the guarantees provided in this agreement shall not be applicable.

Schumacher Decl., Ex. A, Teamsters CBA, Article XX, p. 17.

The CBA also addresses other key subject matter at the heart of Plaintiff's claims, such as the wearing of protective equipment:

> Management may assign equipment to assist you in the performance of your duties. When issued a piece of equipment, you are expected to use that equipment unless directed otherwise. You are not allowed to personalize or modify the equipment in any way.

Schumacher Decl., Ex. A, Teamsters CBA, Exhibit D, p. 75. *See also, Id.*, p. 49 ("The employee shall furnish all tools necessary to perform his/her normal duties with the exception of specialized tools which shall be furnished by the Company."

33.     In addition, the CBA contains a broad management rights provision reserving rights of the Company not specifically limited by the terms of the CBA. *Id,* p. 4.

34.     **Plaintiff's claims all relate to issues and policies of workplace safety that are governed by multiple CBA terms that require interpretation**. Section 301 of the LMRA is construed quite broadly to cover state-law actions that do not allege a breach of the CBA, but nonetheless require *interpretation* of labor agreements. *Allis Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985) ("When resolution of a state law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim, or dismissed as preempted by federal labor-contract law.") (internal citations omitted) (emphasis added); *see also Paige v. Henry J. Kaiser Co.*, 826 F.2d 857, 861 (9th Cir. 2001) (when resolution of a claim brought under state law is "substantially dependent on analysis" of a collective-bargaining agreement, the claim is preempted by Section 301) (citing *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 394 (1987)); *Hyles v. Mensing*, 849 F.2d 1213, 1215-1216 (9th Cir. 1988); *Young*, 830 F.2d at 997, 999; *Raphael v. Tesoro Refining & Marketing Co., LLC*, No. 2:15–cv–02862–ODW (Ex), 2015 WL 3970293, *6–7

(C.D. Cal. June 30, 2015) ("To further the goal of uniform interpretation of labor contracts, the preemptive effect of § 301 has been extended beyond suits that allege the violation of a collective bargaining agreement . . . *[a] state law claim will be preempted if it is so "inextricably intertwined" with the terms of a labor contract that its resolution will require judicial interpretation of those terms*.) (citing *Allis Chalmers Corp.* at 210–11) (emphasis added).

35.     Further, the collective-bargaining agreement may include implied terms based on the parties' practice, usage, and custom. *Curtis,* 913 F.3d at 1152; *Consolidated Rail Corp. v. Railway Labor Execs.' Ass'n*, 491 U.S. 299, 311 (1989).

36.     Here Plaintiff alleges Defendants violated Section 6400 of the California Labor Code by failing to "ensure that their facility operations were conducted and managed in such a manner so as to safeguard the safety and well-being of their employees;" and failed to establish an "effective injury prevention program." (Compl. ¶ 47, 66-67). Plaintiff appears to base this allegation in part upon alleged discipline for absences, the alleged failure to provide protective equipment, and the availability of sick leave. Each of those concepts are addressed by the CBA and would require interpretation of its terms.

37.     For example, in addressing the availability of sick leave, the CBA provides not only for sick leave, but the availability of other (undefined) leave. The Court would need to interpret whether the additional leave provisions permitted further COVID sick leave, and whether such leave was excused leave - contrary to Plaintiff's allegations that such leave was subject to "points." Schumacher Decl., Ex. A, Teamsters CBA, Article XVI, p. 12.

38.     The CBA also provides that the terms may be altered in the event of national emergencies. Schumacher Decl., Ex. A, Teamsters CBA, Article XX, p. 17. The Court would need to interpret whether that provision applies to a COVID pandemic, and then evaluate Union/Employer shop practice to determine what bargaining/alternative provisions were bargained and/or put in place to respond to respond to the COVID emergency, including as to workplace safety and treatment of absences from work.

39.     Plaintiff alleges the threat of "points" or discipline for absences contributed to an unsafe work environment. The CBA also provides for progressive discipline, but identifies absences differently

SAFEWAY INC.'S NOTICE OF REMOVAL OF CIVIL ACTION TO U.S. DISTRICT COURT
64592868v.1

(differentiating between excused and unexcused absences), with certain absences categorized as excused, such as those for "occupational injury," FMLA leaves, non-occupational leaves of certain types, and "other" leaves provided by contract categorized as excused. In resolving Plaintiff's allegations regarding purported availability of discipline and "points" for COVID leave, the Court would need to interpret CBA terms as to whether COVID leave was excused or unexcused under the terms of the CBA. Schumacher Decl., Ex. A, Teamsters CBA, Ex. C, p. 73. Moreover, the Court would not only need to interpret the terms of the CBA regarding the availability of such discipline, but also shop practice regarding the actual imposition (or non-imposition) of such discipline during the COVID crisis for COVID related illness/absences. *Curtis,* 913 F.3d at 1152 (shop practice part of the CBA for purposes of LMRA preemption); *Consolidated Rail Corp. v. Railway Labor Execs.' Ass'n,* 491 U.S. 299, 311 (1989) (same); *Marquez v. Toll Glob. Forwarding*, 804 F. App'x 679, 681 (9th Cir. 2020) (labor code claim preempted under the LMRA: "Under longstanding labor law principles ... the practices of the industry and the shop ... [are] equally a part of the [CBA] although not expressed in it.")

40.    Because Plaintiff's claims necessarily implicate multiple CBA provisions and shop practice that the Court will be called to interpret, Plaintiff's claims are "preempted" by Section 301 of the LMRA, and this matter is properly removable to this Court pursuant to 28 U.S.C. § 1441.

41.    Plaintiff cannot avoid preemption by styling these claims as separate state or federal law claims. Courts within the Ninth Circuit have repeatedly found workplace safety claims (including claims brought under Labor Code Section 6400, as here) preempted where they implicate CBA terms. *See, e.g. Brown v. Brotman Medical Center, Inc.,* 571 Fed. Appx. 572 (9th Cir. 2014) (holding that plaintiff's workplace safety claim under California Labor Code 6400 was preempted under the LMRA where CBA terms pertaining to workplace safety and management rights would need to be interpreted). In *Brown*, the Ninth Circuit noted that Section 6400 does "not require an employer to take all conceivable steps to ensure safety, nor forbid an employer from adopting practices or methods which might conceivably result in harm to an employee." *Id.* at 575-76. "Rather, § 6400 gives employers room for discretion in their decisions about workplace safety." *Id.* The Ninth Circuit noted that Plaintiff's claim therefore focused on "general decisions that [the employer] made in setting up its workplace," and that those

decisions were subject to the CBA's management rights provision regarding workplace safety, which the court would be required to interpret. *Id.* (finding the Section 6400 claim preempted under the LMRA). *See also, Burnette v. Godshall*, 828 F. Supp. 1439 (N.D. Cal. 1993) (Section 6400 claim concerning failure to provide safe workplace preempted by the LMRA where claim would require interpretation of the CBA, including discipline provisions (as here) relevant to Plaintiff's claim theory).

## SUPPLEMENTAL JURISDICTION

42.     As detailed above, Plaintiff's claims are (1) expressly brought by invoking federal law (Third Cause of Action for alleged violation of Federal OSHA); (2) necessarily raise substantial and disputed issues of federal law regarding evolving federal guidelines and requirements issued by multiple federal agencies; and (3) raise disputed interpretive questions regarding relevant terms of the CBA that governed Zuniga's employment, and arise under Section 301 of the LMRA.

43.     To the extent that any claim is found not to present a federal question, all of Plaintiff's claims (each of which pertain to Zuniga's employment with Safeway), allege and incorporate the same federal guidelines and statutes, raise the same workplace safety issues, and are within the supplemental jurisdiction of this Court under 28 U.S.C. section 1367(a) (and removable), in that they are sufficiently related to the Section 301 claims and Federal OSHA claim that they form part of the same case or controversy under Article III of the United States Constitution. *See, e.g., Franco v. E-3 Systems,* 2019 WL 6358947 (N.D. Cal. Nov. 8, 2019) (where overtime claim was preempted,  the Court exercised supplemental jurisdiction over the remaining state law employment claims:  "Plaintiff's remaining claims under California law arise from the same working conditions and relationship with Defendant during the same period as Plaintiff's overtime claim.")  In the alternative, any such other claims for relief are separate and independent claims that are properly removable to this Court pursuant to 28 U.S.C. section 1441(c). Thus, this action is removable in its entirety.

## VENUE

44.     Venue lies in the Northern District of California pursuant to 28 U.S.C. sections 84(b), 1441 and 1446(a) because this action is being removed from the Superior Court of the State of

California for the County of Alameda.[3]

## NOTICE OF REMOVAL

45.    This Notice of Removal will be promptly served on Plaintiff and her counsel, as well as filed with the Clerk of the Superior Court of the State of California for the County of Alameda.

## PRAYER FOR REMOVAL

46.    WHEREFORE, Safeway prays that this civil action be removed from the Superior Court of the State of California, County of Alameda to the United States District Court for the Northern District of California.

DATED: July 2, 2020                              Respectfully submitted,

                                                  SEYFARTH SHAW LLP


                                                  By:  /s/ Michael W. Kopp
                                                      William J. Dritsas
                                                      Michael W. Kopp

                                                  Attorneys For Defendants
                                                  SAFEWAY INC.; ALBERTSONS COMPANIES,
                                                  INC.

---

[3] Defendant reserves the right to move for transfer of venue to the Eastern District pursuant to 28 U.S.C. § 1404(a) ("For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.")

SAFEWAY INC.'S NOTICE OF REMOVAL OF CIVIL ACTION TO U.S. DISTRICT COURT

64592868v.1

1

## **PROOF OF SERVICE**

2

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action.  My business address is 400 Capitol Mall, Suite 2350, Sacramento, California  95814-4428.  On July 2, 2020, I served the within document(s):

3

4

**SAFEWAY INC.'S NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT;**

5

6

**DECLARATION OF MICHAEL W. KOPP IN SUPPORT OF DEFENDANTS' REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT;**

7

**DECLARATION OF PENNY SCHUMACHER IN SUPPOERT OF SAFEWAY INC'S NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT;**

8

9

**DEFENDANTS' REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT;**

10

**CIVIL COVER SHEET;**

11

**SAFEWAY INC.'S CERTIFICATION OF INTERESTED ENTITIES OR PERSONS (LOCAL RULE 3-15);**

12

13

**ALBERTSONS COMPANIES, INC.'S CERTIFICATION OF INTERESTED ENTITIES OR PERSONS (LOCAL RULE 3-15);**

14

☒ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Sacramento, California, addressed as set forth below.

15

16

☐ by placing the document(s) listed above, together with an unsigned copy of this declaration, in a sealed envelope or package provided by an overnight delivery carrier with postage paid on account and deposited for collection with the overnight carrier at Sacramento, California, addressed as set forth below.

17

18

| | |
|---|---|
| Paul A. Matiasic | Attorneys for Plaintiff |
| Hannah E. Mohr | |
| The Matiasic Firm, P.C. | Tel: 415-675-1089 |
| 44 Montgomery Street, suite 3850 | Fax: 415-675-1103 |
| San Francisco, CA  94104 | |

19

20

21

22

I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

23

24

25

I declare that I am employed in the office of a member of the bar of this court whose direction the service was made.  Executed on July 2, 2020, at Sacramento, California.

26

27

_Linda Ninelist_

28

_____
Linda Ninelist

64675453v.1

**EXHIBIT A**


CT Corporation

**Service of Process Transmittal**
06/08/2020
CT Log Number 537754575

TO:   SHELBY BROOKS, Paralegal
      SAFEWAY INC.
      5918 Stoneridge Mall Rd
      Pleasanton, CA 94588-3229

RE:   **Process Served in California**

FOR:  Safeway Inc.  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | NORMA ZUNIGA, INDIVIDUALLY, AND SUCCESSOR-IN-MTEREST TO PEDRO ZUNIGA, DECEASED, PLTF. vs. SAFEWAY INC., ET AL., DFTS. |
| **DOCUMENT(S) SERVED:** | - |
| **COURT/AGENCY:** | None Specified<br>Case # HG20062742 |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Los Angeles, CA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 06/08/2020 at 10:23 |
| **JURISDICTION SERVED :** | California |
| **APPEARANCE OR ANSWER DUE:** | None Specified |
| **ATTORNEY(S) / SENDER(S):** | None Specified |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 06/08/2020, Expected Purge Date: 06/13/2020<br><br>Image SOP<br><br>Email Notification,  SHELBY BROOKS  shelby.brooks@safeway.com<br><br>Email Notification,  Julie Nylander  julie.nylander@safeway.com |
| **SIGNED:**<br>**ADDRESS:** | C T Corporation System<br>208 S La Salle St Ste 814<br>Chicago, IL 60604-1101 |
| **For Questions:** | 866-203-1500<br>DealTeam@wolterskluwer.com |

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

| | FOR COURT USE ONLY<br>*(SOLO PARA USO DE LA CORTE)* |
|---|---|

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
SAFEWAY INC.; ALBERTSONS COMPANIES, INC.; and DOES 1 THROUGH 100, INCLUSIVE

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

NORMA ZUNIGA, individually, and as successor-in-interest to PEDRO ZUNIGA, Deceased

ENDORSED
FILED
AT ALAMEDA COUNTY

MAY 13 2020

CLERK OF THE SUPERIOR COURT
By **Roni Gill**

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* Alameda County Superior Court<br>1225 Fallon Street<br>Oakland, California 94612 | CASE NUMBER: *(Número del Caso):*<br>**HG20062742** |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Paul A. Matiasic, 44 Montgomery Street, Suite 3850, San Francisco, CA 94104; (415) 675-1089

| DATE: MAY 13 2020<br>*(Fecha)* | Clerk, by **Chad Finke** | **Roni Gill** | , Deputy |
|---|---|---|---|
| | *(Secretario)* | | *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010).)*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* SAFEWAY INC

   under: ☒ CCP 416.10 (corporation)       ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)       ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)       ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☒ by personal delivery on *(date):* 6-8-2020

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courts.ca.gov

14

1  Paul A. Matiasic, SBN 226448
   Hannah E. Mohr, SBN 294193
2  **THE MATIASIC FIRM, P.C.**
   44 Montgomery Street, Suite 3850
3  San Francisco, CA 94104
   Phone: 415.675.1089
4  Facsimile: 415.675.1103

5

6  Attorneys for Plaintiff

7

8           SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                   COUNTY OF ALAMEDA

10

11 NORMA ZUNIGA, individually, and as          ) CASE NO. **HG20062742**
   successor-in-interest to PEDRO ZUNIGA,       )
12 Deceased,                                     )
                                                 ) **COMPLAINT FOR DAMAGES**
13                                               )
                    Plaintiff,                   ) (1) **Negligence**
14                                               ) (2) **Gross Negligence**
            vs.                                  ) (3) **Violations of Federal Occupational**
15                                               )     **Safety and Health Act of 1970 (29**
   SAFEWAY INC.; ALBERTSONS                      )     **U.S. Code § 654)**
16 COMPANIES, INC.; and DOES 1                   ) (4) **Violations of The California**
   THROUGH 100, INCLUSIVE,                       )     **Occupational Safety and Health Act**
17                                               )     **of 1973 (Title 8, California Code of**
                    Defendants.                  )     **Regulations § 3203 and California**
18                                               )     **Labor Code § 6400 *et seq.*)**
                                                 ) (5) **Fraudulent Concealment of Injury**
19                                               )     **(California Labor Code § 3602(b)(2))**
                                                 ) (6) **Wrongful Death**
20                                               )
                                                 )
21                                               ) **DEMAND FOR JURY TRIAL**
                                                 )
22                                               )

23

24         COMES NOW Plaintiff NORMA ZUNIGA, individually, and as successor-in-interest to

25 PEDRO ZUNIGA, Deceased (hereinafter "Plaintiff"), by and through her undersigned attorneys,

26 alleges upon information and belief, and complains against Defendants SAFEWAY INC.;

27 ALBERTSONS COMPANIES, INC.; and DOES 1 THROUGH 100, INCLUSIVE (hereinafter

28 collectively "Defendants"), and each of them, as follows:

                                        1
   COMPLAINT FOR DAMAGES

The Matiasic Firm, P.C.
44 Montgomery Street, Suite 3850
San Francisco, CA 94104

ENDORSED
FILED
ALAMEDA COUNTY
MAY 1 3 2020
CLERK OF THE SUPERIOR COURT
By
Roni Gill Deputy

Filed By Fax

## THE PARTIES

1.      At all relevant times herein, Decedent PEDRO ZUNIGA (hereinafter "Decedent" or "Pedro") was a domiciled resident of the City of Turlock, County of Stanislaus, State of California. Decedent was an employee of Defendants SAFEWAY INC. and ALBERTSONS COMPANIES, INC. at the Safeway Distribution Center in Tracy, California.

2.      At all relevant times herein, Plaintiff NORMA ZUNIGA, individually, as successor-in-interest to PEDRO ZUNIGA, Deceased, was, and is now, a competent adult and a resident of the County of Stanislaus, State of California.  Plaintiff is the lawful wife and legal successor-in-interest of the Decedent.

3.      Plaintiff constitutes all the surviving heirs at law of Decedent pursuant to California Code of Civil Procedure § 377.60.  Plaintiff is Decedent's lawful wife.  No other person has a superior right to commence the action or proceeding or to be substituted for the Decedent in the pending action or proceeding.  Plaintiff herein constitutes Decedent's successor-in-interest as defined in California Code of Civil Procedure § 377.11 and succeeds to Decedent's interest in this action.  Plaintiff has complied with C.C.P. § 377.32 and has filed the requisite successor-in-interest declaration herewith.

4.      At all relevant times herein, based on information and belief, Defendants SAFEWAY INC. (hereinafter "SAFEWAY") and DOES 1 through 10 were, and are now, companies involved in food and drug retail and distribution, with supermarkets located in seventeen U.S. states and the District of Columbia, incorporated in the State of California, licensed to do business in the State of California, with their principal place of business in the County of Alameda, State of California.

5.      At all relevant times herein, based on information and belief, Defendants ALBERTSONS COMPANIES, INC. (hereinafter "ALBERTSONS") and DOES 11 through 20

The Matlatic Firm, P.C.
44 Montgomery Street, Suite 3850
San Francisco, CA 94104

2

COMPLAINT FOR DAMAGES

were, and are now, companies involved in food and drug retail and distribution with grocery stores and supermarkets located throughout the United States, incorporated and licensed to do business in the State of California.   SAFEWAY and ALBERTSONS (hereinafter collectively "Defendants") owned and operated the Safeway Northern California Distribution Center (hereinafter "Distribution Center") located at 16900 Schulte Road in Tracy, California.

6.     Defendants SAFEWAY and ALBERTSONS are alter egos and/or agents of each other such that the corporate form should be disregarded.

7.     ALBERTSONS has ownership and control over SAFEWAY and has claimed in filings that it wholly owns SAFEWAY as a subsidiary.

8.     ALBERTSONS and SAFEWAY share many of the same executive officers and appear to use the same assets.

9.     ALBERTSONS serves as the parent company for SAFEWAY, which it calls a "banner" under which it owns and operates stores and distribution centers.   ALBERTSONS exerts control over SAFEWAY's business and day-to-day operations.

10.     The true names and capacities, whether individual, corporate, associate, agency, familial, representative, or otherwise, of Defendants named herein as DOES 1 through 100, inclusive, are unknown to Plaintiff at this time, and they are therefore sued by such fictitious names pursuant to California Code of Civil Procedure §474.  Plaintiff prays to amend this complaint to allege the true names and capacities of DOES 1 through 100 when Plaintiff discovers such true identities.  Each of the DOE Defendants designated herein is negligently or otherwise in some manner legally responsible for the events and happenings alleged herein, and negligently or otherwise caused or contributed to the injuries and damages to Plaintiff as hereinafter alleged.

11.     At all times mentioned herein, each and every of the Defendants herein was the agent, ostensible agent, licensee, servant, partner, joint venturer, employer, employee, affiliate,

The Mastagni Firm, P.C.
44 Montgomery Street, Suite 3850
San Francisco, CA 94104

3

assistant, relative, or volunteer of each of the other Defendants, and each was at all times alleged herein acting in the course and scope of said agency, ostensible agency, license, service, partnership, joint venture, employment, affiliation, assistance, relation, and volunteering.

## JURISDICTION AND VENUE

12.     Venue is proper in the County of Alameda under California Code of Civil Procedure §395.5, on the basis that the principal place of business of one or more Defendants is located in the County of Alameda.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

### COVID-19

13.     COVID-19 is an infectious respiratory disease caused by the SARS-CoV-2 virus.

14.     The virus is highly contagious.  Transmission of SARS-CoV-2 primarily occurs by way of respiratory droplets in coughs and sneezes of infected persons in close proximity to others and via contaminated surfaces.

15.     There is presently no vaccine available for the prevention of COVID-19 in humans.

16.     The incubation period for COVID-19 can range anywhere from 2-14 days.

17.     Common symptoms of the virus include cough, fever, shortness of breath, chills, muscle aches, headache, sore throat, and new loss of taste or smell.  Symptoms vary in severity and, in certain instances, can lead to hospitalization and death.

18.     Due to the highly contagious nature of this virus, the risk of developing severe and potentially fatal symptoms, and the lack of vaccine, experts recommend that individuals prevent the spread of the virus by utilizing hand sanitizers and soaps, utilizing personal protective equipment ("PPE") when in close proximity to others, and maintaining a minimum of 6 feet of physical distance between themselves and others.

//

The Marfasic Firm, P.C.
44 Montgomery Street, Suite 3850
San Francisco, CA 94104

4

1

Timeline of Events

2

19.    It is believed that the virus originated in Asia in late 2019.

3

20.    In January 2020, the first cases of COVID-19 in the United States were reported,

4

5

with the first recorded case of community-spread virus transmission in the United States occurring

6

on January 30, 2020.

7

21.    On that same day, January 30, 2020, the World Health Organization declared this

8

novel coronavirus outbreak a "public health emergency of international concern."

9

22.    On March 4, 2020, California Governor Gavin Newsom declared a State of

10

Emergency due to the global COVID-19 outbreak.

11

23.    On March 9, 2020, the U.S. Department of Labor Occupational Safety and Health

12

Administration released a publication titled "Guidance on Preparing Workplaces for COVID-19."

13

This detailed document explained that SARS-CoV-2 "has the potential to cause extensive

14

outbreaks" in workplaces and provided employers with basic steps they should take to reduce the

15

16

risk of employee exposure to SARS-CoV-2.  These steps included:

17

-  Develop an Infectious Disease Preparedness and Response Plan

18

-  Prepare to Implement Basic Infection Prevention Measures, including:

19

    o  Maintaining regular housekeeping practices, including routine cleaning and
       disinfecting of surfaces, equipment, and other elements of the work environment

20

-  Develop Policies and Procedures for Prompt Identification and Isolation of Sick People,
   if Appropriate

21

22

-  Develop, Implement, and Communicate about Workplace Flexibilities and Protections

-  Implement Workplace Controls

23

    o  Administrative Controls, including: Encouraging sick workers to stay home;
       minimizing contact between workers; alternating days or extra shifts that reduce

24

       the total number of employees in a facility at a given time, allowing them to

25

       maintain distance from one another while maintaining a full onsite work week;
       Developing emergency communications plans, including a forum for answering

26

       workers' concerns and internet-based communications, if feasible; Providing
       workers with up-to-date education and training on COVID-19 risk factors and

27

       protective behaviors (e.g., cough etiquette and care of PPE).

28

    o  Personal Protective Equipment (PPE) Controls, including: Employers are
       obligated to provide their workers with PPE needed to keep them safe while

The Matiasic Firm, P.C.
44 Montgomery Street, Suite 3850
San Francisco, CA 94104

5

COMPLAINT FOR DAMAGES

performing their jobs. The types of PPE required during a COVID-19 outbreak will be based on the risk of being infected with SARS-CoV-2.

- <u>Follow Existing OSHA Standards</u>

24.     On March 11, 2020, due to "alarming levels of spread and severity," the World Health Organization made the assessment that COVID-19 can be characterized as a pandemic.

25.     In guidance issued by the U.S. Food and Drug Administration on March 17, 2020, the topic of workers in food processing and distribution facilities is directly addressed:

> "If an employee is confirmed to have COVID-19, employers should inform fellow employees of their possible exposure to COVID-19 in the workplace."

> "While the primary responsibility in this instance is to take appropriate actions to protect other workers and people who might have come in contact with the ill employee, facilities should re-double their cleaning and sanitation efforts to control any risks that might be associated with workers who are ill regardless of the type of virus or bacteria. For example, facilities are required to maintain clean and sanitized facilities and food contact surfaces."

26.     On March 20, 2020, Defendants posted a "Team Talk" sign titled "Coronavirus Risk: Fact vs. Fiction" at the Distribution Center. This sign specifically informed workers that PPE such as masks and gloves were *not* recommended for use by employees at the Distribution Center, contrary to the guidance and advice issued by federal and state authorities.



The Matloste Firm, P.C.
44 Montgomery Street, Suite 3850
San Francisco, CA 94104

COMPLAINT FOR DAMAGES

6

27.    In March 2020, workers at the Distribution Center began to fall ill with COVID-19. These employees were mandated to continue working not only regular shifts, but also additional shifts (6 days per week, rather than 4 or 5) with longer hours (16 hours per day).

28.    By mid-March 2020, employees at the Distribution Center, including Pedro, began complaining to their supervisors about the dangerous working conditions and their fears associated with the same.  These complaints were met by Defendants with threats of retaliatory disciplinary action, including the potential for accruing 'points' which could lead to termination.

29.    On April 1, 2020, after experiencing a fever and other symptoms, Decedent received a COVID-19 test, which came back positive a few days later.  He was admitted to the hospital on April 4, 2020 with pneumonia and symptoms including coughing, trembling, and fever.  On April 5, 2020, he was transferred to the Intensive Care Unit, where he was intubated and placed in a medically induced coma, and on April 13, 2020, he succumbed to the disease.

30.    On approximately April 17, 2020, a SAFEWAY spokesperson confirmed that at least 51 employees at the Distribution Center had tested positive for COVID-19.  This figure represented 3% of the approximately 1,700 employees at the Distribution Center.

31.    It was not until after Pedro's death that Defendants began to change their tune with respect to safety measures at the Distribution Center – a woefully delayed move that can best be described as "too little, too late."  In fact, these modest changes—consisting of the rearranging of break rooms and the placement of one hand sanitizer stand (which was often left empty for hours) for a department with over 100 employees on shift at any given time—continued to leave Defendants' employees particularly exposed and vulnerable to this virus.

32.    In response to public outcry surrounding Pedro's death and the mounting number of COVID-positive employees at the Distribution Center, Governor Newsom directed his remarks

The Matlasic Firm, P.C.
44 Montgomery Street, Suite 3850
San Francisco, CA 94104

7

COMPLAINT FOR DAMAGES

during a press conference to workers like Pedro, stating: "You are not disposable.  You are essential."  Unfortunately for Decedent and his family, Defendants did not share this sentiment.

Pedro Zuniga

33.     Pedro Zuniga was a happily married 52-year-old man, devoted to his wife, NORMA, and their five children, Jose, Adilene, Marisol, Alicia, and Junior.  He was a man of deep faith and loved traveling, soccer, and spending time with his three grandchildren.

34.     For approximately 22 years, Decedent was employed by Defendants as a loyal, material handler in the produce department at the Distribution Center.

35.     On April 13, 2020, Pedro died in the Intensive Care Unit at Memorial Medical Center in Modesto, California, of cardiopulmonary arrest and hypoxic respiratory failure caused by COVID-19.

36.     Pedro's death was the tragic and preventable result of Defendants' failure to follow federal guidelines, state guidelines, and common sense in order to provide for their Distribution Center workers' health and safety.  Defendants instead prioritized their own greed over the physical health and survival of their employees.

**FIRST CAUSE OF ACTION**

**(Negligence – As Against All Defendants)**

37.     Plaintiff repeats and re-alleges, as if fully set forth herein, each and every allegation contained in paragraphs 1-36 above, and further alleges:

38.     Defendants, and each of them, had a duty to: ensure that their facility operations were conducted and managed in such a manner so as to safeguard the safety and well-being of their employees, including Decedent; comply with Federal and State OSHA guidelines; comply with U.S. Food and Drug Administration guidelines; implement an Infection Disease Preparedness and Response Plan; develop and implement policies and procedures designed to prevent an outbreak

The Matiasic Firm, P.C.
44 Montgomery Street, Suite 3850
San Francisco, CA 94104

8

from occurring at the Distribution Center, including policies and procedures to: screen workers upon arrival at the facility each day, send exposed and potentially exposed workers home, maintain physical distance between workers, provide appropriate PPE for workers, create disinfectant stations throughout the facility; maintain housekeeping practices, including frequent cleaning and disinfecting of surfaces, equipment, and other elements of the work environment; provide workers with up-to-date education and training on COVID-19 risk factors and protective behaviors; respond appropriately to workers' complaints and concerns regarding exposure and/or potential exposure to the virus; not spread or disseminate false or misleading information about the transmission, prospective exposure to, or contraction of the virus, including false or misleading statements or information about the utilization of PPE; send workers who were obviously exhibiting known signs and symptoms of COVID-19 home; not retaliate or threaten disciplinary action against workers who were concerned that they were demonstrating signs and symptoms of COVID-19; not threaten or take any adverse employment action against employees due to attendance issues or concerns about their working environment in light of the COVID-19 pandemic;  and develop and maintain an adequate prophylactic infrastructure after the outbreak occurred.  It was reasonably foreseeable that if Defendants breached their duty of care owed to Decedent, Decedent could sustain injuries and damages, including death.

39.     Defendants, and each of them, breached their duty of care owed to Decedent by:

    a.  Negligently failing to ensure that their facility operations were conducted and managed in such a manner so as to safeguard the safety and well-being of their employees, including Decedent;

    b.  Failing to comply with Federal and State OSHA guidelines;

    c.  Failing to comply with U.S. Food and Drug Administration guidelines;

9

The Matiasic Firm, P.C.
44 Montgomery Street, Suite 3850
San Francisco, CA 94104

d.  Misleading employees into thinking that the utilization of PPE on the job was not necessary or even potentially helpful in the prevention of disease transmission;

e.  Failing to implement an Infection Disease Preparedness and Response Plan;

f.  Failing to develop and implement policies and procedures designed to prevent an outbreak from occurring at the Distribution Center, including policies and procedures to: screen workers upon arrival at the facility each day, send symptomatic, exposed, or potentially exposed workers home, maintain physical distance between workers, provide appropriate PPE for workers, create disinfectant stations throughout the facility;

g.  Failing to maintain housekeeping practices, including frequent cleaning and disinfecting of surfaces, equipment, and other elements of the work environment;

h.  Failing to implement, promote, and enforce social distancing guidelines promulgated by the state and federal governments;

i.  Failing to warn Decedent and other employees in a timely manner that other employees were experiencing COVID-19 symptoms and may have been infected at the Distribution Center;

j.  Failing to conduct periodic inspections of the condition and cleanliness of the Distribution Center to prevent and/or minimize the risk of transmission of the virus;

k.  Failing to develop procedures for identification and isolation of sick workers;

l.  Failing to properly train its personnel to implement and follow procedures designed to minimize the risk of contracting COVID-19;

10

COMPLAINT FOR DAMAGES

m. Failing to provide workers with up-to-date education and training on COVID-19 risk factors and protective behaviors;

n. Failing to respond appropriately to workers' complaints and concerns regarding exposure and/or potential exposure to the virus;

o. Failing to develop and maintain an adequate prophylactic infrastructure after the outbreak occurred;

p. Threatening and/or taking adverse employment actions against employees due to attendance issues or concerns about their working environment in light of the COVID-19 pandemic.

In these negligent actions and inactions, Defendants exceeded the inherent risk associated with Decedent's job.

40.     The negligence, recklessness, carelessness, and other wrongdoing of Defendants, and each of them, was a direct and proximate cause of Decedent's injuries and ultimate death on or about April 13, 2020.  The harm, injuries, and damages caused by Defendants, and each of them, including Decedent's predeath wage loss and medical bills for treatment of COVID-19, survive the death of the Decedent.

41.     As a direct and proximate result of the negligence, recklessness, carelessness, and other wrongdoing of Defendants, and each of them, and the resulting death of Decedent, Plaintiff has been, and will continue to be, deprived of her husband's love, companionship, society, comfort, care, attention, guidance, support, future financial dependence on Decedent, other future financial contributions, future gifts, services, and other (non-economic) damages in a sum in excess of the jurisdictional minimum of this Court, in an amount allowable by law, according to proof.

42.     As a further direct, legal, and proximate result of the negligence, carelessness, recklessness, and wrongdoing of Defendants, and each of them, and the resulting death of

The Matiasic Firm, P.C.
44 Montgomery Street, Suite 3850
San Francisco, CA 94104

11

COMPLAINT FOR DAMAGES

The Matiasic Firm, P.C.
44 Montgomery Street, Suite 3850
San Francisco, CA 94104

Decedent, Plaintiff has incurred funeral, cremation and/or burial, and other related expenses in a sum according to proof.

43.     Said conduct as herein alleged was undertaken by, authorized, approved of, and ratified by managing agents of Defendants, and was done knowingly and willfully, and further was malicious and oppressive in conscious disregard of Decedent's rights and safety, subjecting Decedent to cruel and unjust hardship.  As such, Decedent's legal successor-in-interest is entitled to punitive or exemplary damages given that this claim survives his death.

44.     WHEREFORE, Plaintiff prays for judgment for damages as hereinafter set forth.

## SECOND CAUSE OF ACTION

### (Gross Negligence – As Against All Defendants)

45.     Plaintiff repeats and re-alleges, as if fully set forth herein, each and every allegation contained in paragraphs 1-44 above, and further alleges:

46.     Defendants, and each of them, had a duty to: ensure that their facility operations were conducted and managed in such a manner so as to safeguard the safety and well-being of their employees, including Decedent; comply with Federal and State OSHA guidelines; comply with U.S. Food and Drug Administration guidelines; implement an Infection Disease Preparedness and Response Plan; develop and implement policies and procedures designed to prevent an outbreak from occurring at the Distribution Center, including policies and procedures to: screen workers upon arrival at the facility each day, send exposed and potentially exposed workers home, maintain physical distance between workers, provide appropriate PPE for workers, create disinfectant stations throughout the facility; maintain housekeeping practices, including frequent cleaning and disinfecting of surfaces, equipment, and other elements of the work environment; provide workers with up-to-date education and training on COVID-19 risk factors and protective behaviors; respond appropriately to workers' complaints and concerns regarding exposure and/or potential exposure to

12

COMPLAINT FOR DAMAGES

the virus; not spread or disseminate false or misleading information about the transmission, prospective exposure to, or contraction of the virus, including false or misleading statements or information about the utilization of PPE; send workers who were obviously exhibiting known signs and symptoms of COVID-19 home; not retaliate or threaten disciplinary action against workers who were concerned that they were demonstrating signs and symptoms of COVID-19; not threaten or take any adverse employment action against employees due to attendance issues or concerns about their working environment in light of the COVID-19 pandemic; and develop and maintain an adequate prophylactic infrastructure after the outbreak occurred. It was reasonably foreseeable that if Defendants breached their duty of care owed to Decedent, Decedent could sustain injuries and damages, including death.

47.     Defendants, and each of them, breached their duty of care owed to Decedent by:

    a.  Negligently failing to ensure that their facility operations were conducted and managed in such a manner so as to safeguard the safety and well being of their employees, including Decedent;

    b.  Failing to comply with Federal and State OSHA guidelines;

    c.  Failing to comply with U.S. Food and Drug Administration guidelines;

    d.  Misleading employees into thinking that the utilization of PPE on the job was not necessary or even potentially helpful in the prevention of disease transmission;

    e.  Failing to implement an Infection Disease Preparedness and Response Plan;

    f.  Failing to develop and implement policies and procedures designed to prevent an outbreak from occurring at the Distribution Center, including policies and procedures to: screen workers upon arrival at the facility each day, send symptomatic, exposed, or potentially exposed workers home, maintain physical

13

The Matlosz Firm, P.C.
44 Montgomery Street, Suite 3850
San Francisco, CA 94104

distance between workers, provide appropriate PPE for workers, create disinfectant stations throughout the facility;

g. Failing to maintain housekeeping practices, including frequent cleaning and disinfecting of surfaces, equipment, and other elements of the work environment;

h. Failing to implement, promote, and enforce social distancing guidelines promulgated by the state and federal governments;

i. Failing to warn Decedent and other employees in a timely manner that other employees were experiencing COVID-19 symptoms and may have been infected at the Distribution Center;

j. Failing to conduct periodic inspections of the condition and cleanliness of the Distribution Center to prevent and/or minimize the risk of transmission of the virus;

k. Failing to develop procedures for identification and isolation of sick workers;

l. Failing to properly train its personnel to implement and follow procedures designed to minimize the risk of contracting COVID-19

m. Failing to provide workers with up-to-date education and training on COVID-19 risk factors and protective behaviors;

n. Failing to respond appropriately to workers' complaints and concerns regarding exposure and/or potential exposure to the virus;

o. Failing to develop and maintain an adequate prophylactic infrastructure after the outbreak occurred;

The Matiasic Firm, P.C.
44 Montgomery Street, Suite 3850
San Francisco, CA 94104

14

p. Threatening and/or taking adverse employment actions against employees due to attendance issues or concerns about their working environment in light of the COVID-19 pandemic.

In these negligent actions and inactions, Defendants exceeded the inherent risk associated with Decedent's job.

48. Defendants knew of the high risk of viral transmission and contraction of COVID-19 by workers, including Decedent, at the Distribution Center. Despite having this knowledge, as the pandemic unfolded, Defendants forced employees, including Decedent, to work even more shifts with longer hours without taking any measures to ensure safe workplace conditions.

49. Defendants' conduct in continuing to send their workers, including Decedent, into a dangerous and hazardous workplace without any protective measures in place in the midst of this pandemic, despite having knowledge of specific guidelines from state and federal agencies, demonstrates an intentional failure to do what reasonably careful companies would do under the circumstances, exhibits a willful and conscious disregard for the safety of Decedent and his fellow workers, and evidences reckless indifference by Defendants, which constitutes gross negligence.

50. The negligence, gross negligence, recklessness, carelessness, and other wrongdoing of Defendants, and each of them, was a direct and proximate cause of Decedent's injuries and ultimate death on or about April 13, 2020. The harm, injuries, and damages caused by Defendants, and each of them, including Decedent's predeath wage loss and medical bills for treatment of COVID-19, survive the death of the Decedent.

51. As a direct and proximate result of the negligence, gross negligence, recklessness, carelessness, and other wrongdoing of Defendants, and each of them, and the resulting death of Decedent, Plaintiff has been, and will continue to be, deprived of her husband's love, companionship, society, comfort, care, attention, guidance, support, future financial dependence on

The Mattasic Firm, P.C.
44 Montgomery Street, Suite 3850
San Francisco, CA 94104

15

COMPLAINT FOR DAMAGES

Decedent, other future financial contributions, future gifts, services, and other (non-economic) damages in a sum in excess of the jurisdictional minimum of this Court, in an amount allowable by law, according to proof.

52.     As a further direct, legal, and proximate result of the negligence, gross negligence, carelessness, recklessness, and wrongdoing of Defendants, and each of them, and the resulting death of Decedent, Plaintiff has incurred funeral, cremation and/or burial, and other related expenses in a sum according to proof.

53.     Said conduct as herein alleged was undertaken by, authorized, approved of, and ratified by managing agents of Defendants, and was done knowingly and willfully, and further was malicious and oppressive in conscious disregard of Decedent's rights and safety, subjecting Decedent to cruel and unjust hardship.  As such, Decedent's legal successor-in-interest is entitled to punitive or exemplary damages given that this claim survives his death.

54.     WHEREFORE, Plaintiff prays for judgment for damages as hereinafter set forth.

### THIRD CAUSE OF ACTION

**(Violations of Federal Occupational Safety and Health Act of 1970 (29 U.S. Code § 654) – As Against All Defendants)**

55.     Plaintiff repeats and re-alleges, as if fully set forth herein, each and every allegation contained in paragraphs 1-54 above, and further alleges:

56.     Section 5 of the Occupational Safety and Health Act of 1970 sets forth the basic duties owed by an employer to its employees:

(a) Each employer –

    (1) shall furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees;

    (2) shall comply with occupational safety and health standards promulgated under this Act.

16

COMPLAINT FOR DAMAGES

The Matinsic Firm, P.C.
44 Montgomery Street, Suite 3850
San Francisco, CA 94104

57.     Defendants, and each of them, breached their duty of care owed to Decedent pursuant to Section 5 of the Occupational Safeway and Health Act of 1970 by: failing to ensure that their facility operations were conducted and managed in such a manner so as to safeguard the safety and well-being of their employees, including Decedent; failing to comply with Federal and State OSHA guidelines; failing to comply with U.S. Food and Drug Administration guidelines; failing to implement an Infection Disease Preparedness and Response Plan; misleading employees into thinking that the utilization of PPE on the job was not necessary or even potentially helpful in the prevention of disease transmission; failing to develop and implement policies and procedures designed to prevent an outbreak from occurring at the Distribution Center, including policies and procedures to: screen workers upon arrival at the facility each day, send exposed and potentially exposed workers home, maintain physical distance between workers, provide appropriate PPE for workers, create disinfectant stations throughout the facility; failing to maintain regular housekeeping practices, including routine cleaning and disinfecting of surfaces, equipment, and other elements of the work environment; failing to provide workers with up-to-date education and training on COVID-19 risk factors and protective behaviors; failing to respond appropriately to workers' complaints and concerns regarding exposure and/or potential exposure to the virus; and failing to develop and maintain an adequate prophylactic infrastructure after the outbreak occurred. In these negligent actions and inactions, Defendants exceeded the inherent risk associated with Decedent's job.

58.     The negligence, gross negligence, recklessness, carelessness, and other wrongdoing of Defendants, and each of them, was a direct and proximate cause of Decedent's injuries and ultimate death on or about April 13, 2020. The harm, injuries, and damages caused by Defendants, and each of them, including Decedent's predeath wage loss and medical bills for treatment of COVID-19, survive the death of the Decedent.

The Matlasic Firm, P.C.
44 Montgomery Street, Suite 3850
San Francisco, CA 94104

17.

COMPLAINT FOR DAMAGES

The Matisse Firm, P.C.
44 Montgomery Street, Suite 3850
San Francisco, CA 94104

59. As a direct and proximate result of the negligence, gross negligence, recklessness, carelessness, and other wrongdoing of Defendants, and each of them, and the resulting death of Decedent, Plaintiff has been, and will continue to be, deprived of her husband's love, companionship, society, comfort, care, attention, guidance, support, future financial dependence on Decedent, other future financial contributions, future gifts, services, and other (non-economic) damages in a sum in excess of the jurisdictional minimum of this Court, in an amount allowable by law, according to proof.

60. As a further direct, legal, and proximate result of the negligence, gross negligence, carelessness, recklessness, and wrongdoing of Defendants, and each of them, and the resulting death of Decedent, Plaintiff has incurred funeral, cremation and/or burial, and other related expenses in a sum according to proof.

61. Said conduct as herein alleged was undertaken by, authorized, approved of, and ratified by managing agents of Defendants, and was done knowingly and willfully, and further was malicious and oppressive in conscious disregard of Decedent's rights and safety, subjecting Decedent to cruel and unjust hardship. . As such, Decedent's legal successor-in-interest is entitled to punitive or exemplary damages given that this claim survives his death.

62. WHEREFORE, Plaintiff prays for judgment for damages as hereinafter set forth.

### FOURTH CAUSE OF ACTION

**(Violations of The California Occupational Safety and Health Act of 1973 (Title 8, California Code of Regulations § 3203 and California Labor Code § 6400 *et seq.*) – As Against All Defendants)**

63. Plaintiff repeats and re-alleges, as if fully set forth herein, each and every allegation contained in paragraphs 1-62 above, and further alleges:

18

COMPLAINT FOR DAMAGES

64. The California Occupational Safety and Health Act of 1973 "was enacted by the California Legislature to assure safe and healthful working conditions for all California working men and women."

65. California Code of Regulations § 3203 sets forth California's workplace Injury and Illness Prevention Program:

(a) Effective July 1, 1991, every employer shall establish, implement and maintain an effective Injury and Illness Prevention Program (Program). The Program shall be in writing and, shall, at a minimum:

(1) Identify the person or persons with authority and responsibility for implementing the Program.

(2) Include a system for ensuring that employees comply with safe and healthy work practices. Substantial compliance with this provision includes recognition of employees who follow safe and healthful work practices, training and retraining programs, disciplinary actions, or any other such means that ensures employee compliance with safe and healthful work practices.

(3) Include a system for communicating with employees in a form readily understandable by all affected employees on matters relating to occupational safety and health, including provisions designed to encourage employees to inform the employer of hazards at the worksite without fear of reprisal. Substantial compliance with this provision includes meetings, training programs, posting, written communications, a system of anonymous notification by employees about hazards, labor/management safety and health committees, or any other means that ensures communication with employees.

66. California Labor Code §6401.7 mirrors and expands upon this:

(a) Every employer shall establish, implement, and maintain an effective injury prevention program. The program shall be written, except as provided in subdivision (e), and shall include, but not be limited to, the following elements:

(1) Identification of the person or persons responsible for implementing the program.

(2) The employer's system for identifying and evaluating workplace hazards, including scheduled periodic inspections to identify unsafe conditions and work practices.

(3) The employer's methods and procedures for correcting unsafe or unhealthy conditions and work practices in a timely manner.

(4) An occupational health and safety training program designed to instruct employees in general safe and healthy work practices and to provide specific instruction with respect to hazards specific to each employee's job assignment.

The Matisic Firm, P.C.
44 Montgomery Street, Suite 3850
San Francisco, CA 94104

19

(5) The employer's system for communicating with employees on occupational health and safety matters, including provisions designed to encourage employees to inform the employer of hazards at the worksite without fear of reprisal.

(6) The employer's system for ensuring that employees comply with safe and healthy work practices, which may include disciplinary action.

(b) The employer shall correct unsafe and unhealthy conditions and work practices in a timely manner based on the severity of the hazard.

67.     Defendants, and each of them, breached their duty of care owed to Decedent pursuant to The California Occupational Safety and Health Act of 1973 by: failing to ensure that their facility operations were conducted and managed in such a manner so as to safeguard the safety and well-being of their employees, including Decedent; failing to comply with Federal and State OSHA guidelines; failing to comply with U.S. Food and Drug Administration guidelines; failing to implement an Infection Disease Preparedness and Response Plan; misleading employees into thinking that the utilization of PPE on the job was not necessary or even potentially helpful in the prevention of disease transmission; failing to develop and implement policies and procedures designed to prevent an outbreak from occurring at the Distribution Center, including policies and procedures to: screen workers upon arrival at the facility each day, send exposed and potentially exposed workers home, maintain physical distance between workers, provide appropriate PPE for workers, create disinfectant stations throughout the facility; failing to maintain regular housekeeping practices, including routine cleaning and disinfecting of surfaces, equipment, and other elements of the work environment; failing to provide workers with up-to-date education and training on COVID-19 risk factors and protective behaviors; failing to respond appropriately to workers' complaints and concerns regarding exposure and/or potential exposure to the virus; and failing to develop and maintain an adequate prophylactic infrastructure after the outbreak occurred. In these negligent actions and inactions, Defendants exceeded the inherent risk associated with Decedent's job.

The Matiasic Firm, P.C.
44 Montgomery Street, Suite 3850
San Francisco, CA 94104

20

The Matlasic Firm, P.C.
44 Montgomery Street, Suite 3850
San Francisco, CA 94104

68.     The negligence, gross negligence, recklessness, carelessness, and other wrongdoing of Defendants, and each of them, was a direct and proximate cause of Decedent's injuries and ultimate death on or about April 13, 2020.  The harm, injuries, and damages caused by Defendants, and each of them, including Decedent's predeath wage loss and medical bills for treatment of COVID-19, survive the death of the Decedent.

69.     As a direct and proximate result of the negligence, gross negligence, recklessness, carelessness, and other wrongdoing of Defendants, and each of them, and the resulting death of Decedent, Plaintiff has been, and will continue to be, deprived of her husband's love, companionship, society, comfort, care, attention, guidance, support, future financial dependence on Decedent, other future financial contributions, future gifts, services, and other (non-economic) damages in a sum in excess of the jurisdictional minimum of this Court, in an amount allowable by law, according to proof.

70.     As a further direct, legal, and proximate result of the negligence, gross negligence, carelessness, recklessness, and wrongdoing of Defendants, and each of them, and the resulting death of Decedent, Plaintiff has incurred funeral, cremation and/or burial, and other related expenses in a sum according to proof.

71.     Said conduct as herein alleged was undertaken by, authorized, approved of, and ratified by managing agents of Defendants, and was done knowingly and willfully, and further was malicious and oppressive in conscious disregard of Decedent's rights and safety, subjecting Decedent to cruel and unjust hardship. p.  As such, Decedent's legal successor-in-interest is entitled to punitive or exemplary damages given that this claim survives his death.

72.     WHEREFORE, Plaintiff prays for judgment for damages as hereinafter set forth.

//

//

//

21

COMPLAINT FOR DAMAGES

The Matiasic Firm, P.C.
44 Montgomery Street, Suite 3850
San Francisco, CA 94104

## FIFTH CAUSE OF ACTION

### (Fraudulent Concealment of Injury (California Labor Code § 3602(b)(2)) – As Against All Defendants)

73.     Plaintiff repeats and re-alleges, as if fully set forth herein, each and every allegation contained in paragraphs 1-72 above, and further alleges:

74.     Decedent was injured on the job at the Distribution Center when he was exposed to and contracted COVID-19 in approximately March 2020.

75.     By virtue of the fact that employees were exhibiting recognized signs and symptoms of infection while at the Distribution Center, Defendants knew that there was an outbreak at the Distribution Center and that many of their employees, including Decedent, had suffered job related injuries in the form of COVID-19 exposure, contraction and infections.  Moreover, Decedent's superiors at the Distribution Center had knowledge that Pedro had been exposed to and contracted COVID-19 from his coworker in close proximity.

76.     Despite having this knowledge, Defendants concealed the knowledge of the COVID-19 outbreak at the Distribution Center from their employees, including Decedent.  In addition, despite their knowledge that Pedro had been exposed to and contracted COVID-19 from his coworker in close proximity, and dispute having a duty to inform him of the same, Defendants concealed their knowledge of Pedro's injury, who was not aware of his injury at all times relevant hereto.

77.     Decedent's injury was made worse by Defendants' concealment, including Decedent experiencing a delay in being diagnosed and treated for the virus, which then eventually resulted in his death on April 13, 2020 after a hospitalization that included several days in the Intensive Care Unit.

78.     The negligence, gross negligence, recklessness, carelessness, and other wrongdoing of Defendants, and each of them, was a direct and proximate cause of Decedent's injuries and

22

COMPLAINT FOR DAMAGES

ultimately his death on or about April 13, 2020. The harm, injuries, and damages caused by Defendants, and each of them, including Decedent's predeath wage loss and medical bills for treatment of COVID-19, survive the death of the Decedent.

79.    As a direct and proximate result of the negligence, gross negligence, recklessness, carelessness, and other wrongdoing of Defendants, and each of them, and the resulting death of Decedent, Plaintiff has been, and will continue to be, deprived of her husband's love, companionship, society, comfort, care, attention, guidance, support, future financial dependence on Decedent, other future financial contributions, future gifts, services, and other (non-economic) damages in a sum in excess of the jurisdictional minimum of this Court, in an amount allowable by law, according to proof.

80.    As a further direct, legal, and proximate result of the negligence, gross negligence, carelessness, recklessness, and wrongdoing of Defendants, and each of them, and the resulting death of Decedent, Plaintiff has incurred funeral, cremation and/or burial, and other related expenses in a sum according to proof.

81.    Said conduct as herein alleged was undertaken by, authorized, approved of, and ratified by managing agents of Defendants, and was done knowingly and willfully, and further was malicious and oppressive in conscious disregard of Decedent's rights and safety, subjecting Decedent to cruel and unjust hardship. As such, Decedent's legal successor-in-interest is entitled to punitive or exemplary damages given that this claim survives his death.

82.    WHEREFORE, Plaintiff prays for judgment for damages as hereinafter set forth.

## SIXTH CAUSE OF ACTION

### (Wrongful Death – As Against All Defendants)

83.    Plaintiff repeats and re-alleges, as if fully set forth herein, each and every allegation contained in paragraphs 1-82 above, and further alleges:

23

COMPLAINT FOR DAMAGES

84.     As a direct, legal, and proximate result of the negligence, gross negligence, carelessness, recklessness, and wrongdoing of Defendants, and each of them, as herein alleged, Decedent suffered injuries, ultimately leading to his death on April 13, 2020.

85.     As a further direct, legal, and proximate result of the negligence, gross negligence, carelessness, recklessness, and wrongdoing of Defendants, and each of them, and the resulting death of Decedent, Plaintiff has been, and will continue to be deprived of her husband's love, companionship, society, comfort, care, affection, society, moral support, sexual relations, attention, presence, guidance, future financial dependence on Decedent, other future financial contributions, future gifts, support, and other (non-economic) damages in a sum in excess of the jurisdictional minimum of this Court, in an amount allowable by law, according to proof.

86.     As a further direct, legal, and proximate result of the negligence, gross negligence, carelessness, recklessness, and wrongdoing of Defendants, and each of them, and the resulting death of Decedent, Plaintiff has incurred funeral, burial and/or cremation, and other related expenses in a sum according to proof.

87.     WHEREFORE, Plaintiff prays for judgment for damages as hereinafter set forth.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, jointly and severally, as follows:

    A.     For general (non-economic) damages, according to proof;

    B.     For special (economic) damages, according to proof;

    C.     For exemplary (punitive) damages, according to proof;

    D.     For attorney's fees, pursuant to Code of Civil Procedure §1021.5;

    E.     For prejudgment interest as permitted by law;

    F.     For costs of suit herein; and

The Matiasic Firm, P.C.
44 Montgomery Street, Suite 3850
San Francisco, CA 94104

COMPLAINT FOR DAMAGES

G.    For such other and further relief the Court may deem proper.

Dated: May /2 , 2020                         THE MATIASIC FIRM, P.C.

By:_____
Paul A. Matiasic
Hannah E. Mohr
Attorneys for Plaintiff

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury.

Dated: May /2 , 2020                         THE MATIASIC FIRM, P.C.

By:_____
Paul A. Matiasic
Hannah E. Mohr
Attorneys for Plaintiff

The Matiasic Firm, P.C.
44 Montgomery Street, Suite 3850
San Francisco, CA 94104

25

COMPLAINT FOR DAMAGES

1   Paul A. Matiasic, SBN 226448
    Hannah E. Mohr, SBN 294193
2   **THE MATIASIC FIRM, P.C.**
    44 Montgomery Street, Suite 3850
3   San Francisco, CA 94104
    Phone: 415.675.1089
4   Facsimile: 415.675.1103

5

6   Attorneys for Plaintiff

7

8            SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                   COUNTY OF ALAMEDA

10

11  NORMA ZUNIGA, individually, as    )  CASE NO. **HG20062742**
    successor-in-interest to PEDRO ZUNIGA, )
12  Deceased,                  )
                             )  **DECLARATION OF NORMA ZUNIGA**
13                    )  **PURSUANT TO CALIFORNIA CODE OF**
             Plaintiff,      )  **CIVIL PROCEDURE SECTION 377.32**
14                    )
        vs.                 )
15                    )
    SAFEWAY INC.; ALBERTSONS      )
16  COMPANIES, INC.; and DOES 1     )
    THROUGH 100, INCLUSIVE,     )
17                    )
          Defendants.     )
18                    )

19

20

21

22

23  I, NORMA ZUNIGA, hereby declare the following:

24      1.     I am a resident of the State of California and a Plaintiff in the above-entitled action.

25      2.     The Decedent in this action is my lawful husband, PEDRO ZUNIGA.

26      3.     PEDRO ZUNIGA died on April 13, 2020.

27

28

                                    1
DECLARATION OF NORMA ZUNIGA PURSUANT TO CALIFORNIA CODE OF CIVIL
PROCEDURE SECTION 377.32

---

ENDORSED
FILED
ALAMEDA COUNTY

MAY 13 2020

CLERK OF THE SUPERIOR COURT
By ~~Roni Gill~~
             Deputy

The Matiasic Firm, P.C.
44 Montgomery Street, Suite 3850
San Francisco, CA 94104

Filed By Fax

DocuSign Envelope ID: 74882417-C65D-47EC-B1F2-51BBD31A5139

4.      No proceeding is now pending in California for the administration of PEDRO ZUNIGA's estate.

5.      Decedent PEDRO ZUNIGA died intestate.

6.      I am Decedent PEDRO ZUNIGA's successor-in-interest (as defined in Section 377.11 of the California Code of Civil Procedure) and succeed to Decedent PEDRO ZUNIGA's interest in this action or proceeding.

7.      No other person has a superior right to commence the action or proceeding or to be substituted for the Decedent PEDRO ZUNIGA in the pending action or proceeding.

8.      Attached hereto as **Exhibit "A"** is a true and correct copy of Decedent PEDRO ZUNIGA's certificate of death.

I, NORMA ZUNIGA, declare under penalty of perjury of the laws of the State of California that the foregoing is true and correct, and that this declaration was executed in Turlock _____, California, on May 12 , 2020.

DocuSigned by:

*Norma Zuniga*

NORMA ZUNIGA

2

DECLARATION OF NORMA ZUNIGA PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 377.32

The Matlasic Firm, P.C.
44 Montgomery Street, Suite 3850
San Francisco, CA 94104

# Exhibit "A"

# STATE OF CALIFORNIA
## CERTIFICATION OF VITAL RECORD

### HEALTH SERVICES AGENCY
# STANISLAUS COUNTY
### PUBLIC HEALTH DIVISION

CERTIFICATE OF DEATH

STATE FILE NUMBER: 3052020081181
LOCAL REGISTRATION NUMBER: 3202050001542

| Field | Value |
|---|---|
| NAME OF DECEDENT—FIRST | PEDRO |
| MIDDLE | |
| LAST | ZUNIGA |
| AKA, ALSO KNOWN AS | |
| DATE OF BIRTH | 10/23/1967 |
| AGE | 52 |
| SEX | M |
| BIRTH STATE/FOREIGN COUNTRY | MEXICO |
| SOCIAL SECURITY NUMBER | 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 |
| EVER IN U.S. ARMED FORCES | NO |
| MARITAL STATUS | MARRIED |
| DATE OF DEATH | 04/13/2020 |
| HOUR | 2213 |
| EDUCATION | HS GRADUATE |
| HISPANIC | MEXICAN |
| RACE | MEXICAN |
| USUAL OCCUPATION | MATERIAL HANDLER |
| KIND OF BUSINESS OR INDUSTRY | GROCERY DISTRIBUTION |
| YEARS IN OCCUPATION | 18 |
| DECEDENT'S RESIDENCE | 1850 ENGLISH AVENUE |
| CITY | TURLOCK |
| COUNTY/PROVINCE | STANISLAUS |
| ZIP CODE | 95382 |
| YEARS IN COUNTY | 20 |
| STATE/FOREIGN COUNTRY | CALIFORNIA |
| INFORMANT'S NAME, RELATIONSHIP | ADILENE VALENCIA, DAUGHTER |
| | 3082 YELLOWSTONE LANE, SACRAMENTO, CA 95821 |
| NAME OF SURVIVING SPOUSE/SRDP—FIRST | NORMA |
| MIDDLE | A. |
| LAST BIRTH NAME | CERVANTES |
| NAME OF FATHER/PARENT—FIRST | PEDRO |
| LAST | ZUNIGA |
| BIRTH STATE | MEXICO |
| NAME OF MOTHER/PARENT—FIRST | SAN JUANA |
| LAST BIRTH NAME | AGUILERA |
| BIRTH STATE | MEXICO |
| DISPOSITION DATE | 04/17/2020 |
| PLACE OF FINAL DISPOSITION | TURLOCK MEMORIAL PARK, 575 NORTH SODERQUIST ROAD, TURLOCK, CA 95380 |
| TYPE OF DISPOSITION | BU |
| SIGNATURE OF EMBALMER | BENJAMIN SIVILS |
| LICENSE NUMBER | EMB6783 |
| NAME OF FUNERAL ESTABLISHMENT | ALLEN MORTUARY |
| LICENSE NUMBER | FD 432 |
| SIGNATURE OF LOCAL REGISTRAR | JULIE VAISHAMPAYAN, MD |
| DATE | 04/16/2020 |
| PLACE OF DEATH | MEMORIAL MEDICAL CENTER |
| IF HOSPITAL, SPECIFY ONE | ER/OP |
| COUNTY | STANISLAUS |
| FACILITY ADDRESS | 1700 COFFEE ROAD |
| CITY | MODESTO |
| CAUSE OF DEATH, IMMEDIATE CAUSE (a) | CARDIOPULMONARY ARREST — 24 HRS — C20000945 |
| (b) | HYPOXIC RESPIRATORY FAILURE — 10 DYS |
| (c) | COVID-19 — 10 DYS |
| OTHER SIGNIFICANT CONDITIONS | NONE |
| WAS OPERATION PERFORMED | NO |
| SIGNATURE AND TITLE OF CERTIFIER | AMR FARID AL-BACIL M.D. |
| LICENSE NUMBER | C158482 |
| DATE | 04/18/2020 |
| DATE | 04/04/2020 | 04/13/2020 |
| ATTENDING PHYSICIAN | PRACHI P. VISHWASRAO M.D. |
| ADDRESS | 600 COFFEE ROAD, MODESTO, CA 95355 |

*C20001004511780*

CASTANIS01

---



This is to certify that this document is a true copy of the official record filed with the Stanislaus County Health Services Agency.

DATE ISSUED

**04/23/2020**

JULIE VAISHAMPAYAN, MD, MPH
LOCAL REGISTRAR OF VITAL STATISTICS

This copy is not valid unless prepared on an engraved border displaying seal and signature of Registrar.

000808754



ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE

**CM-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Paul A. Matiasic, SBN 226448; Hannah E. Mohr, SBN 294193<br>THE MATIASIC FIRM, P.C.<br>44 Montgomery Street, Suite 3850, San Francisco, CA 94104<br><br>TELEPHONE NO.: (415) 675-1089   FAX NO. (Optional): (415) 675-1103<br>ATTORNEY FOR (Name): Plaintiff NORMA ZUNIGA | ENDORSED<br>FILED<br>ALAMEDA COUNTY<br><br>MAY 1 3 2020<br><br>CLERK OF THE SUPERIOR COURT<br>By<br>**Roni Gill** Deputy |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA |
|---|
| STREET ADDRESS: 1225 Fallon Street |
| MAILING ADDRESS: 1225 Fallon Street |
| CITY AND ZIP CODE: Oakland, CA 94612 |
| BRANCH NAME: René C. Davidson Courthouse |

| CASE NAME:<br>NORMA ZUNIGA v. SAFEWAY INC., ET AL. | |
|---|---|

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [x] Unlimited   [ ] Limited<br>(Amount    (Amount<br>demanded   demanded is<br>exceeds $25,000)   $25,000) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | HG20062742 |
| | | JUDGE: |
| | | DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [ ] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [x] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition (not specified above) (43)

2. This case [x] is   [ ] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   - a. [ ] Large number of separately represented parties
   - b. [x] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   - c. [x] Substantial amount of documentary evidence
   - d. [x] Large number of witnesses
   - e. [x] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court.
   - f. [ ] Substantial postjudgment judicial supervision.

3. Remedies sought (check all that apply): a. [x] monetary   b. [ ] nonmonetary; declaratory or injunctive relief   c. [x] punitive
4. Number of causes of action (specify): 6: Negl.; Gross Negl.; Fed. OSHA Viol.; CA OSHA Viol.; Fraud Conceal.; Wrong. Death
5. This case [ ] is   [x] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: May 12, 2020

Paul A. Matiasic
_____
(TYPE OR PRINT NAME)       (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courts.ca.gov |
|---|---|---|

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET    CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice– Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute
**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition



# Superior Court of California, County of Alameda
# Alternative Dispute Resolution (ADR) Information Packet

The person who files a civil lawsuit (plaintiff) must include the ADR Information Packet with the complaint when serving the defendant. Cross complainants must serve the ADR Information Packet on any new parties named to the action.

> The Court *strongly encourages* the parties to use some form of ADR before proceeding to trial. You may choose ADR by:
>
> - Indicating your preference on Case Management Form CM-110;
>
> - Filing the Stipulation to ADR and Delay Initial Case Management Conference for 90 Days (a local form included with the information packet); or
>
> - Agree to ADR at your Initial Case Management Conference.
>
> **QUESTIONS?** Call (510) 891-6055. Email adrprogram@alameda.courts.ca.gov
> Or visit the court's website at http://www.alameda.courts.ca.gov/adr

## What Are The Advantages Of Using ADR?

- *Faster* –Litigation can take years to complete but ADR usually takes weeks or months.

- *Cheaper* – Parties can save on attorneys' fees and litigation costs.

- *More control and flexibility* – Parties choose the ADR process appropriate for their case.

- *Cooperative and less stressful* – In mediation, parties cooperate to find a mutually agreeable resolution.

- *Preserve Relationships* – A mediator can help you effectively communicate your interests and point of view to the other side. This is an important benefit when you want to preserve a relationship.

## What Is The Disadvantage Of Using ADR?

- *You may go to court anyway* – If you cannot resolve your dispute using ADR, you may still have to spend time and money resolving your lawsuit through the courts.

## What ADR Options Are Available?

- *Mediation* – A neutral person (mediator) helps the parties communicate, clarify facts, identify legal issues, explore settlement options, and agree on a solution that is acceptable to all sides.

  o **Court Mediation Program**: Mediators do not charge fees for the first two hours of mediation. If parties need more time, they must pay the mediator's regular fees.

Some mediators ask for a deposit before mediation starts which is subject to a refund for unused time.

o **Private Mediation**: This is mediation where the parties pay the mediator's regular fees and may choose a mediator outside the court's panel.

- *Arbitration* – A neutral person (arbitrator) hears arguments and evidence from each side and then decides the outcome of the dispute. Arbitration is less formal than a trial and the rules of evidence are often relaxed. Arbitration is effective when the parties want someone other than themselves to decide the outcome.

  o **Judicial Arbitration Program** (non-binding): The judge can refer a case or the parties can agree to use judicial arbitration. The parties select an arbitrator from a list provided by the court. If the parties cannot agree on an arbitrator, one will be assigned by the court. There is no fee for the arbitrator. The arbitrator must send the decision (award of the arbitrator) to the court. The parties have the right to reject the award and proceed to trial.

  o **Private Arbitration** (binding and non-binding) occurs when parties involved in a dispute either agree or are contractually obligated. This option takes place outside of the courts and is normally binding meaning the arbitrator's decision is final.

### Mediation Service Programs In Alameda County

Low cost mediation services are available through non-profit community organizations. Trained volunteer mediators provide these services. Contact the following organizations for more information:

**SEEDS Community Resolution Center**
2530 San Pablo Avenue, Suite A, Berkeley, CA  94702-1612
Telephone: (510) 548-2377     Website: www.seedscrc.org
Their mission is to provide mediation, facilitation, training and education programs in our diverse communities – Services that Encourage Effective Dialogue and Solution-making.

**Center for Community Dispute Settlement**
291 McLeod Street, Livermore, CA  94550
Telephone: (925) 373-1035     Website: www.trivalleymediation.com
CCDS provides services in the Tri-Valley area for all of Alameda County.

*For Victim/Offender Restorative Justice Services*
**Catholic Charities of the East Bay: Oakland**
433 Jefferson Street, Oakland, CA  94607
Telephone: (510) 768-3100     Website: www.cceb.org
Mediation sessions involve the youth, victim, and family members work toward a mutually agreeable restitution agreement.

**ALA ADR-001**

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address) | FOR COURT USE ONLY |
|---|---|
| TELEPHONE NO.:                          FAX NO. (Optional): | |
| E-MAIL ADDRESS (Optional): | |
| ATTORNEY FOR (Name): | |

| SUPERIOR COURT OF CALIFORNIA, ALAMEDA COUNTY |
|---|
| STREET ADDRESS: |
| MAILING ADDRESS: |
| CITY AND ZIP CODE: |
| BRANCH NAME: |

| PLAINTIFF/PETITIONER: |
|---|
| DEFENDANT/RESPONDENT: |

| STIPULATION TO ATTEND ALTERNATIVE DISPUTE RESOLUTION (ADR) AND DELAY INITIAL CASE MANAGEMENT CONFERENCE FOR 90 DAYS | CASE NUMBER: |
|---|---|

**INSTRUCTIONS:  All applicable boxes must be checked, and the specified information must be provided.**

This stipulation is effective when:

- All parties have signed and filed this stipulation with the Case Management Conference Statement at least 15 days before the initial case management conference.
- A copy of this stipulation has been received by the ADR Program Administrator, 24405 Amador Street, Hayward, CA 94544 or Fax to (510) 267-5727.

1. Date complaint filed: _____. An **Initial Case Management Conference** is scheduled for:

   Date:                          Time:                          Department:

2. Counsel and all parties certify they have met and conferred and have selected the following ADR process (*check one*):

   ☐ Court mediation            ☐ Judicial arbitration
   ☐ Private mediation          ☐ Private arbitration

3. All parties agree to complete ADR within 90 days and certify that:
   a. No party to the case has requested a complex civil litigation determination hearing;
   b. All parties have been served and intend to submit to the jurisdiction of the court;
   c. All parties have agreed to a specific plan for sufficient discovery to make the ADR process meaningful;
   d. Copies of this stipulation and self-addressed stamped envelopes are provided for returning endorsed filed stamped copies to counsel and all parties;
   e. Case management statements are submitted with this stipulation;
   f. All parties will attend ADR conferences; and,
   g. The court will not allow more than 90 days to complete ADR.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

_____          ► _____
(TYPE OR PRINT NAME)                           (SIGNATURE OF PLAINTIFF)

Date:

_____          ► _____

Form Approved for Mandatory Use
Superior Court of California,
County of Alameda
ALA ADR-001 [New January 1, 2010]

**STIPULATION TO ATTEND ALTERNATIVE DISPUTE RESOLUTION (ADR)
AND DELAY INITIAL CASE MANAGEMENT CONFERENCE FOR 90 DAYS**

Cal. Rules of Court,
rule 3.221(a)(4)

(TYPE OR PRINT NAME)                    (SIGNATURE OF ATTORNEY FOR PLAINTIFF)

**ALA ADR-001**

| PLAINTIFF/PETITIONER: | CASE NUMBER.: |
|---|---|
| DEFENDANT/RESPONDENT: | |

Date:

_____      ▶ _____
        (TYPE OR PRINT NAME)                    (SIGNATURE OF DEFENDANT)

Date:

_____      ▶ _____
        (TYPE OR PRINT NAME)                (SIGNATURE OF ATTORNEY FOR DEFENDANT)

Form Approved for Mandatory Use
Superior Court of California,
County of Alameda
ALA ADR-001 [New January 1, 2010]

**STIPULATION TO ATTEND ALTERNATIVE DISPUTE RESOLUTION (ADR)
AND DELAY INITIAL CASE MANAGEMENT CONFERENCE FOR 90 DAYS**

Cal. Rules of Court,
rule 3.221(a)(4)